FILED

2020 SEP 23 PM 2:59

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

WILLIAM N. HARWIN

CASE NO. 20-

15 U.S.C. § 1

2:20-cr-115-FtM-66MRM

# INDICTMENT

The Grand Jury charges that, at all times relevant to this Indictment:

## COUNT ONE
(Conspiracy to Restrain Trade)

### General Allegations

1. Oncology was the branch of medical science dealing with tumors, including the diagnosis and treatment of cancer. An oncologist was a doctor who treats cancer and provides medical care for a person diagnosed with cancer. The field of oncology had three major areas or specialties: medical, radiation, and surgical. A medical oncologist treated cancer using chemotherapy or other medications. A radiation oncologist treated cancer using radiation therapy.

2. Different types of oncologists often worked together to create a patient's overall treatment plan that combined different types of treatments, including a combination of chemotherapy (administered by medical oncologists), radiation therapy (administered by radiation oncologists), and surgery.

3. Oncologists typically treated cancer patients together with other oncologists as part of a practice group. An oncology practice could have included one or more oncologist specialists, including medical oncologists and radiation oncologists.

4. Cancer patients typically relied on private or public health insurance to pay for oncology treatments provided by oncologists or oncology practices.

## The Defendant and His Co-Conspirators

5. Defendant WILLIAM N. HARWIN ("HARWIN") founded Florida Cancer Specialists & Research Institute, LLC ("FCS"). From at least as early as 1999 and continuing through at least as late as September 2016, he was the President and Managing Physician Partner at FCS and a practicing medical oncologist at FCS.

6. FCS was a privately owned oncology practice with approximately 100 locations in Florida. FCS's headquarters was in Fort Myers, Florida. In various locations in Florida, FCS provided both medical oncology treatments and radiation oncology treatments. In Collier, Lee, and Charlotte counties of Florida ("Southwest Florida"), FCS did not provide radiation oncology treatments to patients.

7. Individual 1 was a founder of Oncology Company A. From at least as early as 1999 and continuing through at least as late as September 2016, Individual 1 was the Chief Executive Officer of Oncology Company A and a practicing radiation oncologist.

8. Oncology Company A was headquartered in Fort Myers, Florida and operated an integrated network of outpatient cancer treatment centers in Florida, and elsewhere. In various locations in Florida, Oncology Company A provided both medical oncology treatments and radiation oncology treatments. In Southwest Florida, Oncology Company A did not provide medical oncology treatments to patients.

9. From at least as early as 2000 and continuing through at least as late as September 2016, Individual 2 was a practicing radiation oncologist at Company A. From in or about 2011 through at least as late as September 2016, Individual 2 was the Chief Medical Officer at Oncology Company A.

10. From at least as early as 2008 and continuing through at least as late as September 2016, Individual 3 was a practicing medical oncologist at FCS. From in or about 2011 through in or about 2013 and from in or about 2014 through at least as late as 2016, Individual 3 also was an Executive Board Member at FCS.

11. From at least as early as 1994 and continuing through at least as late as September 2016, Individual 4 was a practicing medical oncologist at Associates in Hematology Oncology (now known as FCS). From at least as early as 1997 and continuing through at least as late as September 2016, Individual 4 was an Executive Board Member at FCS.

12. Various co-conspirators not made defendants in this Indictment, including FCS, Oncology Company A, Individual 1, Individual 2, Individual 3, Individual 4, and others, knowingly participated in the offense charged in this

3

Indictment and performed acts and made statements in furtherance of the conspiracy.

13. Any reference in this Indictment to any act, deed, or transaction of any company means that the company engaged in the act, deed, or transaction by or through its members, partners, officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## Description of the Offense

14. From at least as early as 1999 and continuing through at least as late as September 2016, the exact dates being unknown to the Grand Jury, in the Middle District of Florida, and elsewhere, the defendant

### WILLIAM N. HARWIN

knowingly entered into and participated in a conspiracy with Individual 1 and other co-conspirators to suppress and eliminate competition by agreeing to allocate medical oncology treatments for cancer patients to FCS and radiation oncology treatments for cancer patients to Oncology Company A in Southwest Florida.

15. HARWIN and Individual 1 agreed that FCS would not offer radiation oncology treatments within Southwest Florida, and that Oncology Company A would not offer medical oncology treatments within Southwest Florida.

16. The conspiracy engaged in by HARWIN, FCS, Oncology Company A, Individual 1, and their co-conspirators was a *per se* unlawful, and thus unreasonable,

restraint of interstate trade and commerce in violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

17. The charged conspiracy consisted of a continuing agreement, understanding, and concert of action among HARWIN and his co-conspirators, the substantial terms of which were to allocate medical oncology treatments and radiation oncology treatments for cancer patients in Southwest Florida, reserving medical oncology treatments for FCS and radiation oncology treatments for Oncology Company A.

## Means and Methods of Conspiracy

18. For the purpose of forming and carrying out the charged conspiracy, HARWIN and his co-conspirators, did those things that they conspired to do, including, among other things:

    a. participating in conversations and communications to discuss the allocation of oncology treatments for cancer patients in Southwest Florida;

    b. agreeing during those conversations and communications to allocate medical oncology treatments and radiation oncology treatments for cancer patients in Southwest Florida between FCS and Oncology Company A;

    c. agreeing during those conversations and communications that FCS would not employ radiation oncologists and Oncology Company A would not employ medical oncologists in Southwest Florida—for example, on February 5, 2012, HARWIN informed Individual 4 and others at FCS, "I told [Individual 1] that

there is no way I will be ok with [Oncology Company A] hiring med oncs, ours or others. Period.";

      d. participating in conversations and communications for the purpose of maintaining the allocation agreement by, for example, working together to prevent competition from oncology treatment providers unaffiliated with either FCS and Oncology Company A in Southwest Florida and taking steps to ensure their respective positions in medical oncology and radiation oncology in Southwest Florida persisted;

      e. participating in conversations and communications, about certain pharmaceutical drug and treatment options and which company should provide them consistent with the agreement to allocate medical oncology treatments and radiation oncology treatments for cancer patients in Southwest Florida—for example, on February 21, 2012, after learning that Oncology Company A was administering the drug Provenge to cancer patients, HARWIN informed Individual 1, "we expect you will end this";

      f. participating in conversations and communications for the purpose of reaffirming, monitoring, and enforcing adherence to the agreement to allocate medical oncology treatments and radiation oncology treatments for cancer patients in Southwest Florida—for example, on April 15, 2013, after Oncology Company A acquired an oncology group that employed medical oncologists, HARWIN instructed Individual 1, "Make then[sic] disappear.";

6

g. providing and refraining from providing medical oncology treatments and radiation oncology treatments for cancer patients in Southwest Florida consistent with the allocation agreement; and

h. submitting requests for payment to and accepting payments from payors and patients for medical oncology and radiation oncology treatments for cancer patients consistent with the allocation agreement in Southwest Florida.

### Trade and Commerce

19. From at least as early as 1999 and continuing through at least as late as September 2016, the business activities of HARWIN and his co-conspirators that are the subject of this Indictment were within the flow of, and substantially affected, interstate trade and commerce. For example: (a) payors located in states other than Florida, including federal and state federal insurance plans and private insurance plans, paid FCS and Oncology Company A for oncology treatments each provided in the state of Florida; (b) FCS and Oncology Company A received payments in Florida from payors located in states other than Florida for oncology treatments each provided; (c) FCS and Oncology Company A purchased and received supplies from outside of Florida for use in providing oncology treatments in Florida; and (d) FCS and Oncology Company A treated in the state of Florida cancer patients who, at the time of treatment, were not full-time residents of Florida.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

A TRUE BILL

_Nathalie Edmonds_
FOREPERSON

9/22/20
DATED

8

_____
MAKAN DELRAHIM
Assistant Attorney General

_____
BERNARD A. NIGRO, JR.
Principal Deputy Assistant Attorney
General

_____
RICHARD A. POWERS
Deputy Assistant Attorney General
for Criminal Enforcement

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement

_____
JAMES J. FREDRICKS
Chief, Washington Criminal II Section

_____
MARK C. GRUNDVIG
Assistant Chief, Washington Criminal
II Section

U.S. Department of Justice
Antitrust Division

_____
F. PATRICK HALLAGAN
WILLIAM J. VIGEN
CHRISTINA J. BROWN
Trial Attorneys

U.S. Department of Justice
Antitrust Division

FORM OBD-34  
September 20

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida  
Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

WILLIAM N. HARWIN

**INDICTMENT**

Violations: 15 U.S.C. § 1

A true bill,

_____  
Foreperson

Filed in open court this 23 day

of September, 2020.

_____  
Clerk

Bail $_____

GPO 863 525