UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 2:20-cr-115-FtM-66MRM

WILLUAM N. HARWIN

_____

# ORDER

Defendant, Dr. William Harwin, M.D., moves for discovery of this Court's grand and petit jury selection procedures, along with demographic information about the grand jury that returned his indictment. (Doc. 21.) As to the former, he asserts that the grand jurors who indicted him in this case (and the pool of potential petit jurors) may not have been an accurate cross-section of the community due to the COVID-19 pandemic. Specifically, Dr. Harwin contends that because certain groups in the community are especially vulnerable to COVID-19, these groups may not have been adequately represented in the grand jury pool because those individuals would be more likely to have COVID-19 related medical concerns precluding them from participation in a grand jury. Thus, Dr. Harwin asks this Court for discovery of certain documents to determine if he has grounds to dismiss the indictment. (Id.)

As will be explained, the Court **GRANTS IN PART** Dr. Harwin's request as it relates to the disclosure of grand jury-related information and **DENIES IN PART** Dr. Harwin's request for discovery as it relates to the forthcoming selection

of a petit jury **WITHOUT PREJUDICE** to his ability to renew that request should this case proceed to a jury trial.

## DISCUSSION

It is axiomatic that the Fifth and Sixth Amendments to the Constitution of the United States require jurors in federal criminal proceedings to be selected without discrimination. See Taylor v. Louisiana, 419 U.S. 522, 530 (1975); United States v. Gordon-Nikkar, 518 F.2d 972, 976 (5th Cir. 1975). As an additional layer of protection, Congress passed the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. §§ 1861–1869, to guarantee that "all litigants in [f]ederal courts entitled to trial by jury . . . have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

The JSSA allows defendants to "inspect, reproduce, and copy" records used "in connection with the jury selection process" in preparation for filing a motion to dismiss their indictment based on improper jury selection practices. Id. § 1867(f). The Supreme Court has held that the right to inspect jury selection documents under the JSSA is "unqualified." Test v. United States, 420 U.S. 28, 30 (1975). But this "unqualified" right only goes so far as helping a defendant "determine whether he has a potentially meritorious jury challenge." Id. Discovery unsuited to this purpose need not be produced. See United States v. Pritt, 458 F. App'x 795, 800 (11th Cir. 2012).[1]

---

[1] The Court does not premise the grant or denial of Dr. Harwin's motion on

As noted, Dr. Harwin moves for discovery of certain documents to determine whether he should move to dismiss his indictment or stay proceedings based on the fair cross-section requirement of the Sixth Amendment and the JSSA.  See Taylor, 419 U.S. at 530; see also United States v. Pepe, 747 F.2d 632, 649 n.17 (11th Cir. 1984) ("The test for a [S]ixth [A]mendment fair cross-section violation applies in determining a violation of the statutory fair cross-section requirement." (citing United States v. Perez-Hernandez, 672 F.2d 1380, 1384–85 (11th Cir. 1982))).

To make a prima facie showing that the fair-cross-section requirement was violated, Dr. Harwin must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).  Most cases dealing with racial

---

the merits and likelihood of success of any forthcoming challenge to the jury selection process.  See United States v. Royal, 100 F.3d 1019, 1025 (1st Cir. 1996) (citing Test, 420 U.S. at 30).  Concerning relevancy, however, Dr. Harwin expressly tethers the justification for his discovery to the COVID-19 pandemic—defined as "the time period beginning March 19, 2020." (Doc. 21 at 1–2 n.1.)  As the Court has stated on the record during status conferences in this case, a Fort Myers Division grand jury returned an indictment charging Dr. Harwin with one count of conspiracy to restrain trade in violation of 15 U.S.C. § 1 on September 23, 2020. Yet that grand jury was empaneled in June 2019, before the start of the COVID-19 pandemic pursuant to the Middle District of Florida's Plan for Qualifications and Selection of Grand and Petit Jurors (last visited May 11, 2021).  That grand jury remained in service until the undersigned empaneled a new grand jury on October 14, 2020.  In sum, the grand jury that returned Dr. Harwin's indictment was empaneled prior to the COVID-19 pandemic, which renders the majority of Dr. Harwin's argument in support of the requested discovery largely immaterial.

exclusion in the United States operate under the assumption that African Americans are a distinctive group in the community.  See, e.g., United States v. Carmichael, 560 F.3d 1270, 1280 (11th Cir. 2009).  The Eleventh Circuit has yet to hold that a diverse group like Hispanic Americans are "distinctive" but, the Court will, in an abundance of caution, assume they are for the purposes of Dr. Harwin's disclosure request.  See United States v. Rodriguez, 776 F.2d 1509, 1511 n.2 (11th Cir. 1985); cf. Castaneda v. Partida, 430 U.S. 482, 495 (1977) (stating in the context of an equal protection challenge to underrepresentation of Mexican-Americans in county grand juries, "[I]t is no longer open to dispute that Mexican-Americans are a clearly identifiable class.").

Age is a different matter.  The Eleventh Circuit has held that "age alone does not identify an identifiable group for Sixth Amendment purposes." Wysinger v. Davis, 886 F.2d 295, 296 (11th Cir. 1989) (holding that adults between eighteen and thirty were not a distinctive group under Duren).  Other circuit courts appear to have reached similar conclusions.  See, e.g., Brewer v. Nix, 963 F.2d 1111, 1113 (8th Cir. 1992) (denying petition for writ of habeas corpus to defendant who argued that Iowa statute exempting people over age sixty-five deprived him of a fair cross-section because the group's "supposed distinctive characteristics are too general and ill-defined"); Silagy v. Peters, 905 F.2d 986, 1010 (7th Cir. 1990) (same for people over seventy); United States v. LaChance, 788 F.2d 856, 876 (2d Cir. 1986) ("Courts of Appeals have uniformly held that age groups are not 'distinctive' enough for [S]ixth [A]mendment (fair cross section) purposes, as 'distinctive' was used in

[Duren].").[2]

Dr. Harwin seeks discovery of this Court's jury selection procedures to determine whether three groups who he claims have been disproportionately affected by COVID-19 were adequately represented in the grand jury that returned his indictment: (1) African Americans; (2) Hispanic Americans; and (3) people from "certain age groups."  (Doc. 21 at 9–13.)  As to this last category, Dr. Harwin never actually says which "age groups" he believes are distinctive for purposes of the Sixth Amendment.  Instead, he generally explains:

> Recent data reflects that those between the ages of 30 and 39 are twice as likely to be hospitalized from COVID-19 and four times as likely to die as those aged 18 to 29; those between the ages of 40 and 49 are three times as likely to be hospitalized from COVID-19 and ten times as likely to die as those aged 18 to 29; and those between the ages of 50 and 64 are four times as likely to be hospitalized from COVID-19 and thirty times as likely to die as those aged 18 to 29.

(Id. at 11–12.)

Assuming this data is accurate, it poses more questions than it answers.  For instance, what threshold for hospitalization from COVID-19 is necessary for a group to be distinctive?  Although older people may be more susceptible to the virus, the Centers for Disease Control and Prevention have also opined that children ages twelve to seventeen were twice as likely to have COVID as children aged five to eleven.  Rebecca T. Leeb, et al., COVID-19 Trends Among School-Aged Children—

---

[2] Although the First Circuit once recognized young adults as a distinctive group for jury selection purposes, it later overruled itself.  See Barber v. Ponte, 772 F.2d 982, 1000 (1st Cir. 1985) (en banc).

United States, March 1–September 19, 2020, Morbidity & Mortality Wkly. Report, at 1410, 1414 (Oct. 2, 2020) https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6939e2-H.pdf.  Putting aside the ineligibility of children to serve on a jury, it strains reason to suggest that higher risk from COVID is enough to make an age group constitutionally distinctive.

While the Court is sensitive to the demands of the moment, it is also bound to apply the Eleventh Circuit's precedent.  The Court does not read Wysinger as narrowly applying to younger age groups, as Dr. Harwin suggests.  (Doc. 21 at 8 n.4.)  Instead, the Court is left with the inescapable conclusion that the Eleventh Circuit meant what it said when it declared that "age alone"—that is, any age group—"does not identify an identifiable group for Sixth Amendment purposes." Wysinger, 886 F.2d at 296.  Thus, because information about the age of excluded jurors is irrelevant to a potentially meritorious JSSA challenge, the Court will not respond to Dr. Harwin's document request insofar as they seek information about age.  See Test, 420 U.S. at 30; Pritt, 458 F. App'x at 800.  And although some of the documents produced in response to Dr. Harwin's requests may incidentally contain information about age, the Court does not view age-based groups as "distinctive" for purposes of the Sixth Amendment and the JSSA.

Based upon the foregoing legal standards, and after careful consideration of Dr. Harwin's discovery request, the Court will provide Dr. Harwin with the following documents as they pertain to the relevant grand jury proceedings and, including specifically, the grand jury that indicted Dr. Harwin:

| Exhibit | Document[3] |
|---|---|
| Exhibit A | Report on Operation of the Jury Selection Plan (Form AO 12) |
| Exhibit B | Current 2019-01 FtM Grand Jury Members |
| Exhibit C | Excused 2019-01 FtM Grand Jury Members |
| Exhibit D | Selected 2019-01 FtM Grand Jury Members |
| Exhibit E | FtM Juror Status Report Wheel: 17A |
| Exhibit F | FLMD Juror Status Report Wheel: 17A |
| Exhibit G | FLMD COVID-19 Juror Letter |
| Exhibit H | FLMD COVID-19 (Petit) Juror Questionnaire |
| Exhibit I | FtM Entire Source List Race/Gender Report |
| Exhibit J | FtM Not Qualified/Excused Source List Race/Gender Report |
| Exhibit K | FtM Processed Questionnaires Source List Race/Gender Report |
| Exhibit L | FtM Qualified Source List Race/Gender Report |
| Exhibit M | Qualified Source List Race/Gender Report Pool #: 201190602 |

---

[3] To avoid any confusion, the Court takes this opportunity to address the documents' potentially misleading stylings and provide important context. For example, certain document titles contain the following designation: "2019-01 Grand Jury." This does not mean that the grand jury was empaneled from 2019 to 2021—rather, the "-01" suffix simply means that this was the first grand jury empaneled in 2019. Had there been a second grand jury in 2019, the title for that grand jury would read: "2019-02 Grand Jury." Additionally, certain documents contain a misleading date sometime in November 2020. This is the date on which the specific document's information was retrieved and the document created. All documents still pertain to the grand jury that was empaneled in June 2019 and returned Dr. Harwin's indictment in September 2020, notwithstanding a later date noted in the document. On this point, Exhibit D—titled "Selected Grand Jury Members"—contains information about the jurors constituting the grand jury at the time it was empaneled (i.e., on the date of its selection). After certain jurors were excused (as noted in Exhibit C "Excused Grand Jury Members"), the remaining grand jurors—identified as the "Current Grand Jury Members" in Exhibit B—returned Dr. Harwin's indictment in September 2020.

| Exhibit N | Panel Source List Race/Gender Report Event #: FtM 2019-1-GJ |
|---|---|
| Exhibit O | Entire Source List Race/Gender Report Pool #:201190602 |
| Exhibit P | Jury Source List Race/Gender Report Event #: FtM-2019-1-GJ |

Accordingly, it is **ORDERED** that**:**

1. Dr. Harwin's Motion for Discovery of Jury Selection Procedures (Doc. 21) is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.

2. The motion (Doc. 21) is **GRANTED** to the extent that the Court will produce the documents this Order identifies, and which are attached as Exhibits to this Order.

3. The motion (Doc. 21) is **DENIED WITHOUT PREJUDICE** to the extent it seeks any greater or different relief than this Order provides. After reviewing the produced documents attached to this Order, Dr. Harwin may file a renewed motion with an explanation of why this Court's production was inadequate and what further information he needs. Dr. Harwin may also renew his request as to the selection of petit jurors, if appropriate, when and if he proceeds to a jury trial.

**ORDERED** at Fort Myers, Florida, on May 11, 2021.

*[signature]*

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE