IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(Fort Myers Division)

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**WILLIAM HARWIN**,<br><br>*Defendant.* | Case No. 2:20-cr-115-JLB-MRM |

**DR. HARWIN'S MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF FINANCIAL CIRCUMSTANCES**

Dr. William Harwin moves for an order precluding the Government from introducing any evidence, testimony, or argument regarding his financial circumstances, including personal wealth, compensation, or assets. This evidence is irrelevant to any issue at trial or Dr. Harwin's motive. Moreover, disclosure of this type of evidence would trigger unnecessary classism, substantially and unfairly prejudicing Dr. Harwin's right to a fair trial. It is well-settled that evidence about wealth or income often encourages juries to equate wealth with wrongdoing. The Court should exclude this evidence under Federal Rules of Evidence 401, 402, and 403. Counsel for Dr. Harwin and counsel for the Government conferred and the Government opposes this motion. Counsel will continue to confer in an effort to narrow the issues in dispute if possible.

**ARGUMENT**

## I. EVIDENCE OF DR. HARWIN'S FINANCIAL CIRCUMSTANCES IS IRRELEVANT.

Dr. Harwin, an oncologist, worked many years to build his oncology practice. Following medical school and residency, Dr. Harwin completed a three-year fellowship in hematology and oncology at the University of Miami and acted as a clinical fellow for the American Cancer Society. In 1984, Dr. Harwin founded Florida Cancer Specialists & Research Institute, LLC ("FCS"), which eventually grew to approximately 100 locations in Florida. Dr. Harwin

is board certified in Internal Medicine, Medical Oncology and Hematology, and has been an oncologist at FCS for over three decades. Dr. Harwin has conducted numerous presentations, countless research studies and clinical trials, and has authored several publications relating to cancer treatment. Dr. Harwin is Past President of Florida Society of Clinical Oncology (FLASCO).

Not surprisingly, Dr. Harwin has acquired considerable wealth over the past 34 years. Dr. Harwin's wealth is "wholly irrelevant to his guilt or innocence in [this] criminal prosecution unless the wealth is directly connected to the offense for which he is standing trial." *United States v. Nill*, 518 F.2d 793, 802 (5th Cir. 1975).

The Government alleges that Dr. Harwin entered into a conspiracy with the founder of another outpatient cancer treatment center ("Oncology Company A") (21st Century Oncology, Inc.) to suppress and eliminate competition by agreeing to allocate (at Southwest Florida locations) medical oncology treatments for cancer patients to FCS and radiation oncology treatments for cancer patients to Oncology Company A. (Dkt. No. 1). According to the Government, the conspiracy was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

15 U.S.C. § 1 "prohibits (1) conspiracies that (2) unreasonably (3) restrain interstate or foreign trade." *Quality Auto Painting Ctr. of Roselle,*

*Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019). Dr. Harwin's financial circumstances, including his personal wealth, compensation, or assets are wholly irrelevant to the elements of the charged offense. And what Dr. Harwin potentially gained from the alleged conspiracy and how he made use of any purported benefits is not relevant to any element of the charged antitrust offense.

Dr. Harwin's financial circumstances are also not relevant to motive. There is no question how and where Dr. Harwin acquired his wealth—through his 34 years as an oncologist and as managing partner of FCS. This is not a situation where Dr. Harwin accumulated a vast amount of money without any legitimate explanation, such as a defendant accused of fraud who cannot explain how he recently purchased expensive cars and jewelry. *See United States v. White*, 589 F.2d 1283, 1286 n.7 (5th Cir. 1979) (citation omitted) ("Where there is other evidence of the guilt of the accused and the crime is of such a nature that the acquisition of money may be regarded as a natural or ordinary result of its perpetration, evidence is admissible of the sudden acquisition of money by the defendant . . . at or subsequent to the time the offense was committed, although the source of the money is not definitely traced or identified by the prosecution.").

Further, the existence of wealth does not equate to a motive to acquire more wealth through unlawful means. *See United States v. Mitchell*, 172 F.3d

1104, 1108-09 (9th Cir. 1999) ("A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value."); *see also United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991) ("The government maintains that the evidence established the defendant's motive because it showed that Ewings had an 'appetite' for money. But who doesn't?").

This is even more true in this case, given that a significant portion of FCS's profits come from locations outside of the Southwest Florida region (where the alleged improper allocation occurred). The Government does not allege that the purported antitrust conspiracy encompassed these FCS locations. Thus, much of Dr. Harwin's compensation and personal wealth results from lawful business pursuits (even under the Government's theory of the case).

Dr. Harwin's financial circumstances are irrelevant to the offense charged, including to his motive, and the Court should exclude it under Rules 401 and 402.

## II. EVIDENCE OF DR. HARWIN'S WEALTH IS UNFAIRLY PREJUDICIAL.

Even if evidence of Dr. Harwin's financial circumstances has some miniscule probative value, which is does not, it should be excluded because the

4

danger of unfair prejudice substantially outweighs any minimal probative value. Fed. R. Evid. 403.

Wealth evidence risks inflaming the jury because it appeals to the potential bias of jurors against the wealthy and risks the jury "equat[ing] wealth with wrongdoing." *United States v. Stahl*, 616 F.2d 30, 31-33 (2d Cir. 1980); *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940) (restraint of trade prosecution) ("[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."); *United States v. Pate*, 853 F. App'x 430, 435-36 (11th Cir. 2021) (per curiam) (quoting *United States v. Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011) ("The risk of unfair prejudice presented by 'wealth' evidence is that the jury might find a defendant guilty simply because she 'had lots of money.'").

The risk of unfair prejudice is even higher in this case, since it is undisputed that Dr. Harwin gained considerable wealth through legitimate means. *See Bradley*, 644 F.3d at 1271 (quoting *United States v. Jackson-Randolph*, 282 F.3d 369, 378 (6th Cir. 2002)) ("[W]e must be careful not to ignore the 'real possibility that the extreme or extravagant wealth or spending was merely made possible by legitimate means.' Otherwise, we run the risk of permitting the introduction of evidence that is probative of nothing more than the defendant's financial success.").

Courts routinely find that evidence of wealth is irrelevant or that its probative value is low and dwarfed by the severe risk of unfair prejudice to the defendant. *See, e.g.*, *Stahl*, 616 F.2d at 32 (reversing conviction where government repeatedly referred to the defendant's wealth, including characterizing the defendant as a "multi-millionaire businessman in real estate"); *Mitchell*, 172 F.3d at 1109 (reversing conviction where government introduced evidence of defendant's financial situation to prove motive to steal); *United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) (excluding evidence of "lavish spending" in case involving alleged improper stock trading); *United States v. Kail*, 18-CR-00172-BLF-1, 2021 WL 261135, at *9 (N.D. Cal. Jan. 26, 2021) (excluding evidence regarding defendant's salary and bonuses in wire fraud case); *United States v. Wilmington Tr. Corp.*, 15-CR-23-RGA, 2017 WL 4480787, at *7 (D. Del. Oct. 6, 2017) (excluding evidence related to individual defendants' wealth and compensation in a case alleging conspiracy to make false statements about past due loans to federal regulators). This case should be no different.

Additionally, the Government should be precluded from introducing such evidence at trial because it would confuse the issues and would be a waste of time. Fed. R. Evid. 403. If this evidence is admitted, Dr. Harwin will be compelled to rebut any inference that the jury may draw from it. *See United States v. Todd*, 108 F.3d 1329, 1333-34 (11th Cir. 1997) (reversing

6

embezzlement conviction because trial court precluded defendant from offering evidence "to combat the government's criminal intent argument that [the defendant] was motivated by greed and selfishness"); *United States v. Hurn*, 368 F.3d 1359, 1365 (11th Cir. 2004) (recognizing constitutional right "to introduce evidence concerning a collateral matter where the government attempts to use that collateral matter as the basis for securing a conviction").

Dr. Harwin would need to address how his compensation compares to other oncologists and managing partners of cancer treatment centers, whether the alleged conspiracy impacted the revenue of FCS, and how any such revenue affected Dr. Harwin's compensation, if at all. This would needlessly "sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case" and would create a series of mini trials. *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998); *see also United States v. Terebecki*, 692 F.2d 1345, 1351 (11th Cir. 1982) ("Since the statement did not concern a major issue in the case, impeachment would have been on a collateral issue and was properly excluded.").

In sum, evidence regarding Dr. Harwin's financial circumstances and wealth may "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged" and would compromise Dr. Harwin's ability to receive a fair trial. *Old Chief v. United States*, 519 U.S. 172, 180

(1997). Additionally, Dr. Harwin would need to rebut any such evidence, needlessly confusing the issues and wasting the Court's time.

## CONCLUSION

Evidence regarding Dr. Harwin's financial circumstances or his lifestyle is wholly irrelevant to the issues in this case. Yet, evidence or testimony on this topic is likely to inflame the jury, causing undue prejudice to Dr. Harwin. Dr. Harwin respectfully requests an order precluding the Government from introducing at trial evidence of his financial circumstances, including personal wealth, compensation, or assets.

Date: January 21, 2022

David Oscar Markus
Margot Moss
MARKUS/MOSS, PLLC
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Telephone: (305) 379 6667
Fax: (305) 379 6668
dmarkus@markuslaw.com

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack (*specially admitted*)
Jeffrey C. Thalhofer (*specially admitted*)
ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com

**CERTIFICATE OF SERVICE**

On this 21st day of January, 2022, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the Middle District of Florida by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack