UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 2:20-cr-00115-VMC-MRM

WILLIAM N. HARWIN

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTION TO THE REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR A HEARING PURSUANT TO *FRANKS V. DELAWARE*

The government hereby responds to Defendant's objection (Doc. 199) to

Magistrate Judge Mac R. McCoy's Report and Recommendation (Doc. 195)

recommending denial of Defendant's motion for a *Franks* hearing (Doc. 60). The

R&R is correct in all respects. Defendant's objection raises no new arguments or

facts not addressed previously by the parties or in Magistrate Judge McCoy's well-

reasoned R&R. The R&R should be adopted in full and Defendant's motion for a

*Franks* hearing should be denied.

## BACKGROUND

Defendant does not dispute—and has therefore waived—Magistrate Judge

McCoy's background findings in the R&R, including two important issues ignored

by Defendant. First, Defendant does not object to the finding that the affidavits

accompanying the Google and Apple warrant applications in question were

"'simultaneously submitted' to the reviewing magistrate judge." R&R at 3. Nor does

Defendant object to the finding that—because of this simultaneous submission—both affidavits "may be considered together" for purposes of deciding the *Franks* motion. R&R at 14. As a result, it is now conceded that the entirety of each email in question was quoted fully and accurately before the reviewing magistrate.

Second, Defendant does not object to the fact that Magistrate Judge McCoy himself had originally "reviewed and issued both warrants" that are the subject of the motion. R&R at 3 n.3. Far from finding an intentional or reckless false statement or omission in the affidavits presented to him, Magistrate Judge McCoy—even with the benefit of Defendant's briefing and the actual emails Defendant argues were maliciously withheld—found both that (a) he was not misled and (b) probable cause would have existed to issue the warrants even without the complained-of statements.

With those preliminary issues clarified, the following additional background is provided:

FBI Special Agent W. Brent Cox, a nearly twenty-year veteran of the FBI with the Fort Myers Resident Agency, Affidavits ¶ 2, who retired approximately four years ago, swore out two affidavits in 2018, one each in support of warrants directed at Google and Apple. The Apple Affidavit focuses on issues and evidence specific to the Apple accounts and the Google Affidavit focuses on issues and evidence specific to the Google accounts. *See also* R&R at 24-25 (explaining that the affidavits differed because of "Agent Cox's obvious intent to provide the reviewing magistrate judge with the information relevant to each search warrant independently").

Agent Cox's Affidavits described how he had "probable cause to believe that beginning as early as 1999 or 2000, subjects of the investigation have conspired to allocate markets, customers, and patients for Cancer Treatment Services, all in violation of 15 U.S.C. § 1." Affidavits ¶ 3. He noted that "[t]he information contained in this affidavit is based on my personal observations and/or information received from other law enforcement officers," and that the affidavits were "not intended to include each and every fact and matter observed by me or known to the FBI or the Antitrust Division." *Id.* ¶ 5.

Agent Cox described how FCS and 21C "entered into a 'gentlemen's agreement' not to compete by allocating the market for Cancer Treatment Services in certain Southwest Florida counties." Affidavits ¶ 10. He further elaborated that "[w]hile both companies provide medical oncology and radiation oncology at different locations around the state, the companies agreed that FCS would not provide radiation oncology and 21C would not provide medical oncology in certain Southwest Florida counties. Therefore, . . . neither offers its full complement of services in centers in Fort Myers, Lee County or the surrounding geographic area. 21C only offers radiation oncology while FCS only offers medical oncology." *Id.*

Agent Cox then swore to the evidence that provided probable cause for the warrants. He explained that the evidence "ha[d] been obtained through review of documents referencing and/or discussing the 'gentlemen's agreement', employee interviews including interviews with a Vice President for Clinical Financial Services (FCS), a Vice President for Human Resources (FCS), a former Regional Vice

President for Southwest Florida (21C) and a Vice President for Strategy and Innovation (21C), and other methods." Affidavits ¶ 11. Defendant does not challenge the validity of the foregoing representations.

With respect to documents, Agent Cox specified that text messages and emails "dating back several years obtained as part of this investigation indicate that [Defendant] and [Dr. Rodriguez][1] frequently used their" Apple iPhones and Gmail accounts "to: (i) communicate with each other about the 'gentlemen's agreement'; (ii) communicate with their counterparts at 21C about the 'gentlemen's agreement' including disagreements about each company's adherence to the agreement; (iii) communicate with other FCS employees about implementing the 'gentlemen's agreement'." Affidavits ¶ 12.

Agent Cox then noted that he would "describe below a few examples of" texts and emails, "all related to Premiere Radiation Oncology (Premiere), a new entrant and smaller provider of both radiation oncology and medical oncology services in Southwest Florida and elsewhere." Affidavits ¶ 13. In other words, the cited emails were only examples, and then only examples of one incident.

Before detailing the documents, however, Agent Cox provided more background on the Premiere incident. He explained that Premiere originally offered radiation oncology, Affidavits ¶ 13, but that "in or around November 2011, 21C and

---

[1] The warrants also sought the contents from accounts associated with Dr. Frank Rodriguez, an FCS partner. Defendant does not seek to suppress the warrants as to these documents. *See* Mot. at 3 n.1.

4

FCS learned that Premiere . . . would start offering medical oncology services. The two companies became increasingly concerned that Premiere's business model would blur the lines they had drawn between medical oncology and radiation oncology and undermine their 'gentlemen's agreement,'" *id.* ¶ 14. Agent Cox explained that "[o]n January 6, 2012, it was announced that Premiere's medical oncologists would now be available on call for inpatient service at Physicians Regional Healthcare System." Apple Aff. ¶ 15; Google Aff. ¶ 16. Defendant does not challenge these points.

Agent Cox then quoted from, and offered relevant context for, a January 7, 2012, email related to the Premiere announcement that forms the primary basis for Defendant's motion. Agent Cox accurately quoted the entirety of the email in question. The entire email reads:

> Bill: we need to move on and do something!
> You do not want me to hire anyone, so you need to do something! I am willing to help in any legal and compliant way! But let them have the market is not a winning strategy!
> Time for you and me to get involved directly. If we do not do something soon they will "invade" lee too, grow to 4 med oncs and compete for contracts.
> Need action yesterday! No talk, action

Mot. Ex. E. Quoting the entire email directly, Agent Cox informed the magistrate:

> On January 7, 2012, DR. DANIEL E. DOSORETZ (21C) forwarded the Premiere email announcement from his corporate email account to "Bill" at BHARWIN@GMAIL.COM informing "Bill" that "we need to move on and do something!" and "[y]ou do not want me to hire anyone, so you need to do something!" A reminder that while 21C did not employ medical oncologists in the relevant area, FCS did not want to run the risk that 21C would react to Premiere's competition by disregarding the "gentlemen's agreement" and entering FCS's turf. DR. DANIEL E.

> DOSORETZ (21C) also represents in his email to "Bill" that he is prepared to work together to address the competitive threat from Premiere before it expands from Collier into Lee county. "I am willing to help in any legal and compliant way! But let them [Premiere] have the market is not a winning strategy! Time for you and me to get involved directly. If we do not do something soon they will "invade" lee too, grow to 4 med oncs and compete for contracts. Need action yesterday! No talk, action."

Google Aff. ¶ 16.

Agent Cox offered additional examples of emails and text messages to support each affidavit. Defendant does not challenge the quotations from any of them. First, Agent Cox explained how on January 8, 2012, Dr. Dosoretz "forwarded the same Premiere email announcement to [Dr. Rodriguez] stating 'I sent this to bill Friday...We cannot allow this to happen in lee.' [Dr. Rodriguez] responds with 'Thanks for bringing this up again. I will work on this.' He signs this email 'Frank' and just below his name is the text 'Sent from my iPhone.'" Apple Aff. ¶ 15; *cf.* Mot. Ex. F.

Second, Agent Cox stated that in or around May 2012, 21C learned that a Premiere-related company "had reached out to FCS about a meeting." Apple Aff. ¶ 16. Agent Cox then quoted from a May 18, 2012, text message from Dr. Dosoretz to Defendant: "'Bill: as you meet with SIU[5] please do not cut any 'deals' that put us in [sic] opposite sides or make me look stupid with my partners [21C's other doctors] as I do not control them. Thanks.'" *Id.* (alterations in original); *cf.* Mot. Ex. G. Agent Cox noted that Defendant responded by "reassuring [Dr. Dosoretz] that he had no such plans" and then quoted the response in full: "'Danny, I never even

responded to his text or returned his call nor have I ever sent Premiere a patient and now I stole one of their med oncs.'" Apple Aff. ¶ 16; *cf.* Mot. Ex. H.

Third, Agent Cox described and quoted accurately from a November 14, 2012, email from Defendant "with the subject line 'HOLY COW,'" where Defendant reported "'that he had heard from the 'godfather himself [DR. DANIEL E. DOSORETZ (21C)] that 21C hired breast cancer surgeon Jeff Lewis here in Fort Myers. That will be a big blow to Premier Oncology at least in Lee County.'" Google Aff. ¶ 15 (alteration in original); *cf.* Mot. Ex. J. Agent Cox explained the context of this action: "By recruiting Premiere's breast cancer surgeon, 21C ensured that this breast surgeon would no longer generally refer the bulk of his patients to Premiere's oncologists if they required either medical oncology or radiation oncology." Google Aff. ¶ 15.

Fourth, Agent Cox explained that "[b]y 2013, Premiere was in financial difficulty and 21C announced plans to acquire the company." Affidavits ¶ 17. He then described an April 15, 2013, email from Defendant to Dr. Dosoretz, noting "the subject line: 'FWD: Premiere Radiation Oncology/21C Merger.'" *Id.*; *cf.* Mot. Ex. I. Agent Cox provided the context that Defendant "was concerned that this acquisition could result in 21C offering medical oncology services in certain Southwest Florida counties contrary to the market allocation agreement between FCS and 21C." Affidavits ¶ 17. Agent Cox then quoted accurately the entire email from Defendant to Dr. Dosoretz: "'what does this mean related to their med oncs. Our docs don't

want them. Make then [sic] disappear.'" *Id.* ¶ 17 (alteration in original); *cf.* Mot. Ex. I.

## STANDARD OF REVIEW

The correct standard of review is clear error, not de novo. Under Rule 59, matters before magistrate judges are either (a) nondispositive and reviewed for clear error or (b) dispositive and reviewed de novo. *See* Fed. R. Crim. P. 59; *see also* 28 U.S.C. § 636 (statutory authority of magistrates consistent with Rule 59). Dispositive motions include motions to dismiss an indictment and motions to suppress, *see* Fed. R. Crim. P. 59(b), while nondispositive motions are everything else that "does not dispose of a charge or defense," *id.* at Fed. R. Crim. P. 59(a). Defendant's motion sought an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Because the motion did not "dispose of a charge or defense" and was not a motion to suppress, it is a nondispositive motion and the Court should sustain an objection to the R&R only if it "is contrary to law or clearly erroneous." Rule 59(a).

Defendant's objection erroneously assumes the R&R is subject to de novo review. *See* Obj. at 3. But Defendant cites no case law in support and simply cites to Rule 59 and the similar 28 U.S.C. § 636(b)(1)(C) without elaboration. Presumably, Defendant believes his motion for a *Franks* hearing qualifies as a motion to suppress, which would be reviewed de novo. *See* Rule 59(b). However, a motion for a *Franks* hearing is not a motion to suppress, and the two motions are reviewed under different standards. *See, e.g.*, *United States v. Karmo*, No. 20-CR-170-1-JPS, 2021 WL

1712669, at *1 (E.D. Wis. Apr. 30, 2021) (addressing objection to magistrate's order denying *Franks* hearing under clearly erroneous standard and magistrate's recommendation denying motion to suppress under de novo standard); *cf. United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014) (applying abuse of discretion review to district court denial of *Franks* hearing).

Having assumed the wrong standard of review, Defendant's objection does not explain why the R&R "is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). His objection should be overruled on that basis alone.

## ARGUMENT

Defendant does not object to the R&R's statement of the appropriate legal standards for evaluating a motion for a *Franks* hearing. The government therefore incorporates the R&R's legal standard here. *See* R&R at 3-5. In short, Defendant must make a substantial preliminary showing both that (1) the affiant deliberately or recklessly included false statements or omitted material information and (2) the false statement or omission was essential to finding probable cause. *Id.* at 3-4. While Defendant's showing is something less than a preponderance, it is still a "standard [that] is not lightly met." *Id.* at 4.

## I.  Defendant Has Not Shown a False Statement or Omission.

As an initial matter, the R&R is correct in finding that "Defendant has not met his burden to make a substantial preliminary showing that he is entitled to an evidentiary hearing because Defendant provides 'no affidavit or otherwise sworn

statement alleging that [the affiant] knowingly or recklessly included false statements in the search warrant' and has not otherwise sufficiently explained the absence of such documentation, as required by Eleventh Circuit precedent." R&R at 15 (quoting *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006)).  In short, even assuming Defendant has identified a misstatement or omission (which the government disputes), he has provided no "offer of proof" that such misstatement or omission was done knowingly or recklessly. *Arbolaez*, 450 F.3d at 1294.

Defendant argues that the R&R erred by requiring him to submit an affidavit to prove a knowing or reckless false statement, *see* Obj. at 12-14, but Defendant misreads the R&R. The R&R did not require an affidavit, but explained that merely comparing the quoted emails to Agent Cox's affidavits was not sufficient to show the required scienter. *See* R&R at 15-16 (citing *United States v. Taylor*, No. 2:20-cr-222-ECM-JTA, 2021 WL 7209524, at *9 n.18 (M.D. Ala. Sept. 13, 2021), *report and recommendation adopted*, 2022 WL 610170 (M.D. Ala. Mar. 1, 2022) (rejecting the defendant's argument that there was no need to submit supporting affidavits because the discrepancies and errors on the face of the Government's search documents established his right to a *Franks* hearing)).

The new affidavit attached to Defendant's objection does not change anything. That affidavit simply incorporates the same emails already attached to Defendant's original motion and makes the same arguments. *See* Obj. Ex. 1. Therefore, even assuming that Defendant has identified a misstatement or omission,

he still has not provided any "offer of proof" to show that it was done knowingly or recklessly. *Arbolaez*, 450 F.3d at 1294.

In any event, the R&R makes clear that the motion fails even if Defendant's offer of proof was sufficient. *See* R&R at 17. As found by Magistrate Judge McCoy, none of the three emails that Defendant bases his motion on were mischaracterized and, in fact, each was quoted fully and accurately.

**A. The January 7, 2012 email was not mischaracterized.**

Defendant's complaint about Agent Cox's use of the phrase "gentlemen's agreement" in quotes while describing the January 7 email ignores crucial context for how Agent Cox used that same phrase in quotes throughout the Affidavits as a shorthand for the illegal agreement at issue. As the R&R correctly noted, "Defendant's argument and reading of the affidavits would impermissibly require the Court to interpret the affidavit 'in a hypertechnical manner.'" R&R at 19 (quoting *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994)).

The Affidavits use quotes around the phrase "gentlemen's agreement" seventeen times. Apple Aff. ¶¶ 10 (once), 11 (once), 12 (thrice), 13 (once), 14 (once); 15 (once), 32 (once); Google Aff. ¶¶ 10 (once), 11 (once), 12 (thrice), 13 (once), 14 (once), 16 (once). For example, Agent Cox used "'gentlemen's agreement'" in quotes to describe generally the formation of the agreement, clearly using the quotes without quoting from any particular document: "Beginning around 1999 or 2000, the two companies entered into a 'gentlemen's agreement' not to compete by allocating the market for Cancer Treatment Services in certain Southwest Florida counties."

Affidavits ¶ 10. As the R&R found, a natural reading of the affidavits is that Agent Cox consistently used the phrase "'gentlemen's agreement' . . . as a shorthand to describe the alleged unlawful agreement between Dr. Dosoretz and Dr. Harwin," R&R at 18, consistent with common use of quotation marks "for purposes other than quotation or attributing a word or phrase to a specific source," *id.* at 16-17 (citing cases). The R&R therefore easily found "that Agent Cox's use of quotation marks in connection with the phrase 'gentleman's agreement' clearly did not suggest or imply an actual quote or direct attribution." *Id.* at 18.

Despite the fact that Agent Cox used the term "'gentlemen's agreement'" in quotes as a shorthand for the illegal agreement throughout his Affidavits, Defendant isolates one particular example of this rhetorical device in the January 7 email and insists that it was, in fact, Agent Cox's attempt to intentionally or recklessly mislead Magistrate Judge McCoy into thinking the phrase was a direct quote. To the contrary, it is clear from context that, as he did throughout his Affidavits, Agent Cox was using the term "'gentlemen's agreement'" to refer in shorthand to the illegal market allocation agreement, rather than quoting directly from the email. This is apparent on the face of the relevant portion of the Google Affidavit:

> On January 7, 2012, DR. DANIEL E. DOSORETZ (21C) forwarded the Premiere email announcement from his corporate email account to "Bill" at BHARWIN@GMAIL.COM informing "Bill" that "we need to move on and do something!" and "[y]ou do not want me to hire anyone, so you need to do something!" A reminder that while 21C did not employ medical oncologists in the relevant area, FCS did not want to run the risk that 21C would react to Premiere's competition by disregarding the "gentlemen's agreement" and entering FCS's turf.

Google Aff. ¶ 16. The second sentence is quite plainly describing the quotes from the first sentence, and is not purporting to be a direct quote from the email itself, as the R&R found. *See* R&R at 19.

Finally, as the R&R correctly notes, assuming *arguendo* that using "gentlemen's agreement" in quotes to describe the January 7 email was misleading, "Defendant has not shown that Agent Cox intentionally or recklessly misled the reviewing magistrate judge." R&R at 19. Given that the same phrase was used in quotes fifteen other times when it was clearly not quoting anything, the use of the same phrase in quotes to describe the January 7 email was at most negligent. *Id.* at 20.

### B. The November 14, 2012, email was not mischaracterized.

Agent Cox's Google Affidavit quoted Defendant's November 14, 2012, email accurately. With respect to this email, Agent Cox stated:

> On November 14, 2012, DR. WILLIAM N. HARWIN (FCS) sent an email from his WHARWIN@GMAIL.COM account to FCS's Executive Board, Senior Management, and Doctors in Lee, Collier and Charlotte Counties with the subject line "HOLY COW." DR. WILLIAM N. HARWIN (FCS) reported to the group that he had heard from the "godfather himself [DR. DANIEL E. DOSORETZ (21C)] that 21C hired breast cancer surgeon Jeff Lewis here in Fort Myers. That will be a big blow to Premier Oncology at least in Lee County." **By recruiting Premiere's breast cancer surgeon, 21C ensured that this breast surgeon would no longer generally refer the bulk of his patients to Premiere's oncologists if they required either medical oncology or radiation oncology.**

Google Aff. ¶ 15; *cf.* Mot. Ex. J. Defendant does not assert that the above contains any misquote or omits any material portion from the email. Indeed, Defendant does

13

not even deny that his email's reference to the "godfather" was, as Agent Cox explained, a reference to Dr. Dosoretz.

Instead, Defendant complains that Agent Cox did not inform the magistrate that the bolded section above was his interpretation of the email. But Agent Cox did not do so because, as Magistrate Judge McCoy found, "it is clear to the reader that this information is Agent Cox's interpretation of [the] email as opposed to a summary of the email itself." R&R at 26.

Finally, to the extent anyone could interpret the sentence as anything but Agent Cox's interpretation of the email, Defendant has put forward no evidence that the resulting ambiguity was done intentionally or recklessly, as opposed to negligently.

**C. The April 15, 2013, email was not mischaracterized.**

Likewise unfounded is Defendant's complaint that Agent Cox's background explanation to Defendant's April 15, 2013, email was a misrepresentation. The relevant portion from the Affidavits, with the complained of portion in bold, reads:

> By 2013, Premiere was in financial difficulty and 21C announced plans to acquire the company. On April 15, 2013, DR. WILLIAM N. HARWIN (FCS) emailed DR. DANIEL E. DOSORETZ (21C) from his WHARWIN@GMAIL.COM account with the subject line "FWD: Premiere Radiation Oncology/21C Merger." **He was concerned that this acquisition could result in 21C offering medical oncology services in certain Southwest Florida counties contrary to the market allocation agreement between FCS and 21C.** He wrote to DR. DANIEL E. DOSOERTEZ (21C) asking "what does this mean related to their med oncs. Our docs don't want them. Make then [sic] disappear."

Affidavits ¶ 17.

14

As with the November 14, 2012, email, the R&R found correctly that it was clear from context that the sentence in dispute was offered as background to explain the quoted email. *See* R&R at 27. Defendant does not dispute that the email itself was quoted accurately, and Magistrate Judge McCoy found that the actual quote was consistent with Agent Cox's description, and not misleading. *Id.* at 28.

Finally, Defendant offers no reason to doubt that "the information put forth [wa]s believed or appropriately accepted by the affiant as true." *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003).

## II.   In Addition, and in the Alternative, Probable Cause Existed Absent the Alleged Misrepresentations or Omissions.

As found by Magistrate Judge McCoy, "[e]ven assuming *arguendo* that Defendant met his burden as to the first prong of the *Franks* analysis, the motion is due to be denied because none of the challenged statements were essential to a finding of probable cause." R&R at 28. The R&R should be affirmed, and the motion denied, on this independent basis.

As an initial matter, Defendant's objection and analysis of the probable cause showing ignores entirely the portions of the January 7, 2012, email that were quoted accurately. Defendant's only complaint about the January 7 email is the use of the phrase "gentlemen's agreement" to describe it, but if that statement is excised the rest of the email (which was quoted in full and accurately) should still be part of the probable cause analysis. Defendant's objection ignores entirely the content of the January 7 email quoted accurately in the Affidavits. He ignores this because probable

15

cause can be established by the January 7 email itself. As the R&R found, "the email shows two competing entities discussing the effect of a third entity entering the medical oncology market" and "evinces a desire to prohibit or hinder the competitor's entry into the market and culminates in a veiled threat that 21C will also enter into the medical oncology market if nothing is done to stop Premiere." R&R at 45. The R&R concluded: "Such a discussion is clearly consistent with an agreement between the two competing entities to allocate the market based on market type." *Id.*

But each Affidavit included other grounds for finding probable cause, as found by Magistrate Judge McCoy in an exhaustive re-review of each Affidavit. *See* R&R at 31-44. Agent Cox explained that evidence establishing probable cause "ha[d] been obtained through review of documents referencing and/or discussing the 'gentlemen's agreement', employee interviews including interviews with a Vice President for Clinical Financial Services (FCS), a Vice President for Human Resources (FCS), a former Regional Vice President for Southwest Florida (21C) and a Vice President for Strategy and Innovation (21C), and other methods." Affidavits ¶ 11. He also explained that text messages and emails "dating back several years obtained as part of this investigation indicate that [Defendant] and [Dr. Rodriguez] frequently used their" Apple iPhones and Gmail accounts to communicate about the agreement. *Id.* ¶ 12. These recitations alone would have been enough to establish probable cause.

But even assuming that documents must provide the sole basis for a finding of probable cause that evidence of a Sherman Act violation was likely to be found in Defendant's accounts, they did so here. Agent Cox explained how FCS and 21C viewed Premiere's announcement that it would offer both medical oncology and radiation oncology in Southwest Florida as a threat. Affidavits ¶ 14. Agent Cox then detailed some of the evidence of the fallout from fear of that threat. He quoted from a January 8, 2012, email where Dr. Dosoretz (21C) told Dr. Rodriguez (FCS) that he sent the Premiere announcement to Defendant and that "'We cannot allow this to happen in lee.'" Apple Aff. ¶ 15. The "We" in Dr. Dosoretz's email plainly refers to FCS and 21C, and Dr. Dosoretz was explaining how the two companies had to work together to block a competitor from entering the market.

Agent Cox also quoted from a May 18, 2012, text message where Dr. Dosoretz threatened Defendant that if he met with a senior executive related to Premiere he should not "'cut any "deals" that put us in [sic] opposite sides.'" Apple Aff. ¶ 16. Defendant reassured Dr. Dosoretz (from his Apple device) that he "'never even responded to his text or returned his call nor have I ever sent Premiere a patient and now I stole one of their med oncs.'" *Id.* This exchange not only implies that the two separate oncology practices viewed themselves as being on the same side (as opposed to "opposite sides"), but is in fact evidence that Defendant and Dr. Dosoretz agreed not to deal with Premiere in order to perpetuate their market allocation agreement.

Agent Cox also quoted from a November 14, 2012, email where Defendant (using his Google account) referred to Dr. Dosoretz as the "'godfather,'" and explained to his business partners that he heard from Dr. Dosoretz that 21C had hired a breast cancer surgeon in Fort Myers, which "'will be a big blow to Premier Oncology at least in Lee County.'" Google Aff. ¶ 15. In other words, Dr. Dosoretz kept Defendant informed of 21C's internal hiring decisions because it redounded to each company's benefit in their fight against Premiere, and therefore ensured the anticompetitive agreement was able to continue.

Finally, Agent Cox quoted from an April 15, 2013, email from Defendant to Dr. Dosoretz concerning 21C's merger with Premiere. Affidavits ¶ 17. As previously established by Agent Cox, Premiere employed both radiation oncologists and medical oncologists in Southwest Florida. *Id.* ¶ 14. The news of the merger, therefore, would suggest to Defendant that 21C would start to employ medical oncologists in Southwest Florida. Defendant's reaction to the news is particularly telling. He instructed Dr. Dosoretz (using his Google email, from his Apple iPhone): "'what does this mean related to their med oncs. Our docs don't want them. Make then [sic] disappear.'" *Id.* ¶ 17. Defendant's demand that Dr. Dosoretz "[m]ake [the medical oncologists] disappear" is not only probative of an agreement between Defendant and Dr. Dosoretz that medical oncology was reserved for FCS, it shows him enforcing it. *See also* R&R at 36 (email "suggests the existence of and is consistent with an agreement to allocate the market"). Moreover, he used his Google

email and Apple iPhone to do it, establishing probable cause to search those specific accounts.

Ironically, it is Defendant that misrepresents the April 15, 2013, email in his objection. In an effort to avoid a finding of probable cause, Defendant suggests that he "simply asked what would happen to the medical oncologists who were practicing with Premiere at the time of 21C's merger with Premiere, and told Dr. Dosoretz that FCS did not want to hire them." R&R at 21. He plainly did more than that, initiating the conversation upon learning of the acquisition (and the possibility of medical oncologists working for 21C) and then demanding that Dr. Dosoretz make the medical oncologists "disappear."

Defendant's attempts to offer innocent explanations for each email and text, standing on their own, are unavailing. Of course, he has the right to present those explanations at trial. But they cannot serve to undercut Supreme Court and Eleventh Circuit precedent that the existence of probable cause is to be determined under the totality of the circumstances and that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969); *see also United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995) ("[P]robable cause itself is a doctrine of reasonable probability and not certainty."). Taken together, the emails and texts show concerted action on the part of Defendant, Dr. Dosoretz, FCS, and 21C to deal with the threat that Premiere posed to their illegal market allocation agreement by offering both medical and radiation oncology. This threat

19

ultimately involved 21C acquiring Premiere and Defendant demanding that Dr.

Dosoretz "make [the med oncs] disappear." Affidavits ¶ 17.

## CONCLUSION

For the foregoing reasons, Defendant's objection (Dkt. No. 199) to Magistrate

Judge McCoy's Report and Recommendation (Dkt. No. 195) should be overruled.

The Report and Recommendation should be adopted, and Defendant's motion for a

*Franks* hearing (Dkt. No. 60) should be denied.

Dated: June 1, 2022

<div style="margin-left:40%">

Respectfully submitted,

/s/ William J. Vigen
William J. Vigen (DC Bar No. 997316)
Mark C. Grundvig (DC Bar No. 461580)
F. Patrick Hallagan (IL Bar No. 06269887)
Eun-Ha Kim (NY Bar No. 4589651)
Aidan D. McCarthy (MD Bar No. 2012170240)
U.S. Department of Justice, Antitrust Division
450 Fifth Street NW, Suite 11300
Washington D.C. 20530
Tel: (202) 305-1878
william.vigen@usdoj.gov

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 1, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered notices of appearance in this matter.

<div align="center">

/s/ William J. Vigen
William J. Vigen

</div>